UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

4C, INC.,

                    Plaintiff,

          v.

MICHAEL POULS, KIDZ-IDZ, INC.,
SAMANDA PROPERTIES II OF NJ,
LLC, CUSTOMER LOYALTY
INTERNATIONAL, INC., STELLAR
TICKETS, LLC, and NEW WORLD
INCENTIVES, LLC,

                    Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 11-00778
       (JEI/KMW)

**OPINION**

**APPEARANCES:**

THE NORMAN LAW FIRM
Stephen Price Norman, Esq.
Daniel Charles Herr, Esq.
30838 Vines Creek Road, Suite 3
Dagsboro, DE 19939
     Counsel for Plaintiff

FOX ROTHSCHILD LLP
Carl Douglas Neff, Esq.
919 North Market Street, Suite 1300
PO Box 2323
Wilmington, DE 19899
     Counsel for Defendants

     *Pro Hac Vice*:
HANKIN SANDMAN & PALLADINO
Colin G. Bell, Esq.
30 South New York Avenue
Atlantic City, NJ 08401
     Counsel for Defendants

1

**IRENAS**, Senior District Judge[1]:

This breach of contract and business torts suit comes before the Court on Defendants' motion for summary judgment.[2] (Dkt. No. 58)]

The parties agree that they entered into a services agreement in August 2009, but disagree on the content of the agreement.  Because this disagreement is one of fact that cannot be resolved at the present stage, Defendants' motion, as to Plaintiff's breach of contract claim, is denied.

Plaintiff's bevy of tort and equity claims, however, fail as a matter of law.  Consequently, Defendants' motion as to these claims will be granted.

## I.

Plaintiff 4C, Inc. ("4C") provides web design and IT services throughout the United States.  (Defs.' Stmts ¶ 1) Edward Timmons, Jr. is its President and, at the time of the parties' dispute, the controlling shareholder.  (Id. ¶ 3)

Defendants Kidz-IDz, Inc., Samanda Properties II of NJ, LLC, Customer Loyalty International, LLC, New World Incentives,

---

[1] Of the District of New Jersey, sitting by designation.

[2] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a): no Defendant is a citizen of Delaware, the place of incorporation and principal place of business of Plaintiff.

Edward Timmons, Jr., President of 4C, was previously a plaintiff but has since "abandoned his personal claims."  (Opp'n Br. at 11)

LLC, and Stellar Tickets, LLC (collectively, the "Corporate Defendants) are all web-based businesses owned and operated by Defendant Michael Pouls.[3]  (Defs.' Stmts ¶ 9)  Non-party Monica Siciliano is Vice-President of the Corporate Defendants. (Defs.' Stmts ¶ 26)

Between April 2007 and August 2009, 4C provided web design work for the Corporate Defendants, often sending an invoice addressed to one corporation that included work for the others. (Defs.' Stmts ¶¶ 10-12, 15)  Timmons often dealt only with Siciliano.  (Timmons Dep. 16)  The parties contracted for this work informally over email, with 4C's invoices based on both flat fees and hourly billing arrangements.  (Defs.' Stmts ¶ 12; Opp'n Br. at 3)  Despite the haphazard nature of 4C's billing, Defendants paid all invoices in their entirety.  (Defs.' Stmts ¶ 13)

In late July or early August 2009, Pouls and Timmons spoke on the phone regarding the timeliness of 4C's work product. (Opp'n Br. at 4-5; Pouls Dep. 18-21)  Pouls "promised" Timmons all of the Corporate Defendants' business, and Timmons "promised [] that he would be on time" and would have someone available

---

[3] Defendant Kidz-IDz, Inc. sells child safety products.  (Defs.' Stmts ¶ 5) Defendant Samanda Properties II of NJ, LLC develops and sells real estate. (Id. ¶ 6)  Defendants Customer Loyalty International, LLC and New World Incentives, LLC operate internet-based customer loyalty programs.  (Id. ¶ 7) Defendant Stellar Tickets, LLC brokers tickets to sports and entertainment events.  (Id. ¶ 8).

"on standby" to help with any requests of the Corporate

Defendants.[4] (Pouls Dep. 20-21) 4C subsequently hired an

additional employee to help with the workload. (Pouls Dep. 16)

On or about September 1, 2009, 4C issued an invoice to

Defendants for $25,645.00. (Defs.' Stmts ¶ 14) The invoice was

larger than anticipated, and led to a second phone conversation

between Pouls and Timmons. (Id. ¶ 18; Opp'n Br. at 3)

The parties agreed to continue working together and agreed

that the Corporate Defendants would pay 4C a $3,000 "retainer"

for an undefined period of time. (Defs.' Stmts ¶ 19; Opp'n Br.

at 3-4) The parties do not, however, agree on what the $3,000

purchased.[5] (Id.) Plaintiff alleges that 4C was to maintain its

hourly records and bill the Corporate Defendants at the end of

every month for any sums not covered by the retainer. (Defs.'

Stmts ¶ 19; Opp'n Br. 4) Defendants contest that the $3,000 was

a "flat-fee" to cover all work 4C did for the Corporate

Defendants, and 4C would not be entitled to any additional

remuneration.[6] (Defs.' Stmts ¶ 21)

---

[4] Timmons also agreed to provide Pouls with a "'backup book' that would
identify how all of 4C's computer programming was written for all of the
Defendant Entities, so that Pouls and the Defendant Entities could reference
this book in the event of a problem." (Opp'n Br. at 4)

[5] The parties agree that the retainer was a means of ensuring revenue to 4C so
that Timmons could hire an additional web developer. (Defs.' Stmts ¶21;
Opp'n br. at 4)

[6] Pouls stated in his deposition:
    It was decided that we would come up with a flat amount of money to
    pay every week come hell or high water. And that at the end of

During the course of the conversation, Timmons "somewhat had the impression that [Pouls] was personally guaranteeing" the Corporate Defendants' debts.[7]   (Opp'n Br. at 6; Defs.' Stmts ¶ 19; Timmons Dep. 65-66)

The Corporate Defendants immediately began providing $3,000 weekly payments, without demand or invoice, and making sporadic installment payments toward the outstanding $25,645.00 invoice. (Defs.' Stmts. ¶ 23-24)

In December 2009, the parties' disagreement as to the import of the $3,000 came to light.  Over email, Timmons told Siciliano that "the $3,000 per week is a retainer, and gets subtracted from the invoiced amount[.]"   (Opp'n Br., Ex. 4) Siciliano responded that she doesn't "know that that is [Pouls']

---

six, eight, nine months, whatever we both agreed, we would look
back and we would review how much work was done versus how much
money was paid and adjust that $3,000 going forward up or down.
(Pouls Dep. 11-12)

[7] The only evidence of Pouls' alleged guaranty is the following testimony from Timmons' deposition:
  Q. Okay. Was there ever an oral contract between 4C and Mr. Pouls?
  A. There was a conversation about how Michael Pouls would provide
  4C with a retainer in order to guarantee resources for his separate
  entities.   I'm not sure which entity at that point he was
  representing on that conversation.  But it was him that was talking.
  Q. So you had a –
  A. And personally guaranteeing.
  Q. So during an oral conversation, Mr. Pouls personally guaranteed
  payment by the defendant business entities?
  A. He said that he wanted to guarantee resources from our company
  to perform work for all of his entities.
Timmons Dep. 35:2-21; Opp'n Br. at 6.  Although a plausible interpretation of
Timmons' testimony is that Pouls was seeking to guarantee 4C's resources, and
not, as argued by 4C, his corporations' debts, given the procedural posture
of the case, see infra Section II, the Court construes the facts and
inferences in a light most favorable to 4C.

5

understanding.  I think he thinks you are pretty much salaried."
(Id.)

Timmons expressed surprise at Siciliano's response and
asked her to "find out Michael's understanding on this ASAP."
(Opp'n Br., Ex. 4)  Siciliano responded one minute later: "I
told him, no worries."  (Id.)

The parties continued working together until May 2010, when
Timmons demanded payment for $152,547.29, the sum of all monies
owed in excess of the weekly retainer.  (Opp'n Br. at 10)  The
parties dispute whether 4C sent any invoice between the
September 2009 invoice for $25,645.00 and the May 2010 one for
$152,547.29.  (Defs.' Stmts ¶ 30; Siciliano Dep. at 99; Timmons
Dep. 91-91, 95-97)

When Defendants refused to pay 4C's May invoice, 4C blocked
access to the Corporate Defendants' websites.  (Defs.' Stmts ¶
31)  A third-party developer copied the sites and moved them to
a new server, allowing Pouls and Siciliano access.  (Defs.'
Stmts ¶¶ 32-33)[8]

Plaintiff filed suit September 2, 2011.  (Dkt. No. 1)
Defendants successfully moved to dismiss Plaintiff's copyright
infringement claim, (Dkt. No. 12), and Plaintiff filed an

---

[8] The parties did not have a specific agreement about proprietary rights in
the websites, created for the Corporate Defendants by 4C.  (Defs.' Stmts ¶
38)

Amended Complaint March 21, 2013, (Dkt. No. 39).  Defendants
brought the instant motion at the close of discovery.  (Dkt. No.
58)

## II.

Summary judgment is proper if "the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322
(1986).  In deciding a motion for summary judgment, the Court
must construe the facts and inferences in a light most favorable
to the non-moving party.  Pollock v. Am. Tel. & Tel. Long Lines,
794 F.2d 860, 864 (3d Cir. 1986).

"'With respect to an issue on which the non-moving party
bears the burden of proof, the burden on the moving party may be
discharged by 'showing' – that is, pointing out to the district
court – that there is an absence of evidence to support the
nonmoving party's case.'"  Conoshenti v. Public Serv. Elec. &
Gas, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting Celotex, 477
U.S. at 323).  The role of the Court is not "to weigh the
evidence and determine the truth of the matter, but to determine
whether there is a genuine issue for trial."  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "Only disputes
over facts that might affect the outcome of the suit under the

7

governing law will properly preclude the entry of summary judgment." Id. at 249.

## III.

Plaintiff's Amended Complaint alleges six causes of action: (A) breach of contract; (B) fraudulent misrepresentation; (C) promissory estoppel/detrimental reliance; (D) unjust enrichment; (E) breach of the covenant of good faith and fair dealing; and (F) conversion. (Am. Compl. ¶¶ 62-102) Defendants move to limit Plaintiff's breach of contract claim and dismiss all others. (Mot. at 1-2) For the reasons outlined below, the Court will deny Defendants' motion as to the breach of contract claim and grant the motion as to Plaintiff's tort and equity claims.

## A.

Defendants move to (1) limit 4C's breach of contract damages on account of 4C's failure to mitigate; and (2) strike 4C's breach of contract claim against Pouls.[9]

## 1.

---

[9] "To establish a breach of contract claim, a party must prove: (1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) damages that the plaintiff suffered as a result of the breach." Osram Sylvania Inc. v. Townsend Ventures, LLC, 2013 WL 6199554, at *6 (Del. Ch. Nov. 19, 2013).

In Delaware "[a] party has a general duty to mitigate damages if it is feasible to do so." Norkei Ventures, LLC v. Butler-Gordon, Inc., No. 07c-04-623 JAP, 2008 WL 4152775, at *2 (Del. Super. Aug.28, 2008).  However, "mitigation only applies to damages occurring after a breach." Venhill Ltd. Partnership ex rel. Stallkamp, No. 1866-VCS, 2008 WL 2270488, at *21 n.79 (Del. Ch. June 3, 2008); see also Henkel Corp. v. Innovative Brands Holdings, LLC, No. 3663-VCN, 2013 WL 396245, at *5 (Del. Ch. Jan. 31, 2013) ("While there is a general duty to mitigate damages if it is feasible to do so, a plaintiff need not take unreasonably speculative steps to meet that duty.").

Defendants argue that Siciliano and Timmons' December 2009 email exchange triggered Plaintiff's duty to mitigate: Because Plaintiff then learned of Defendants' position "that the payment agreement constituted a 'flat-fee' arrangement," "4C could have mitigated it[s] losses by ceasing work under the contract or specifically invoking its rights to payment at that point. Instead, by continuing to run up the bill without objecting, it failed to mitigate its losses[.]"  (Br. at 15)

Defendants, however, seem to ignore Siciliano's final response in that very December 2009 exchange: "I told [Pouls], no worries." (Opp'n Br., Ex. 4)  Although the second clause is ambiguous, and thus its exact import must be determined at trial, the email, when read as a whole, does not constitute a

9

breach of the parties' contract.  Consequently, the email exchange did not trigger 4C's duty to mitigate.

Consequently, Defendants' motion to limit 4C's breach of contract claim to those damages incurred before the December 2009 exchange is denied.

## 2.

Defendants move for summary judgment on 4C's breach of contract claim against Defendant Pouls.  (Br. at 1)  4C propounds two bases for including Pouls as a defendant despite him not being a party to the contract: (a) he personally guaranteed payment of 4C's invoices;[10] and (b) his operation of the Corporate Defendants were such that it would be unjust to treat them as separate jural entities.  The Court rejects both bases.

## a.

Defendants seek Pouls' dismissal because personal guarantees to answer for the debt of a corporation are within the Delaware statute of frauds; the statute of frauds requires

---

[10] The Court notes that Pouls' alleged personal guaranty constitutes a separate contract independent of the one entered into between the Corporate Defendants and 4C.  Consequently, Plaintiff's allegations against Pouls conceptually constitute an independent cause of action.  However, because 4C's complaint combines the allegations, and the parties brief the issues together, the Court addresses Pouls' alleged guaranty within 4C's breach of contract claim concerning the parties' services agreement.

10

such promises to be reduced to writing; and Pouls' guaranty was never so reduced.  (Br. at 5-6)[11]

4C responds that the doctrine of equitable estoppel precludes a guarantor's assertion of the statute of frauds defense in light of a promisee's detrimental reliance, and 4C's hiring of an additional employee — a hiring it argues occurred because of Pouls' guaranty — consequently prevents Pouls from asserting the defense.  (Br. at 12)

The evidence does not support 4C's position.

The doctrine of equitable estoppel may be invoked "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." Waggoner v. Laster, 581 A.2d 1127, 1136 (Del. 1990).  "The party claiming estoppel must be able to show by clear and convincing evidence that it lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; relied on the conduct of the party against whom estoppel is claimed; and suffered a prejudicial change of position as a result of his reliance." Borish v. Graham, 655 A.2d 831, 834 (Del. Super. 1994); In re Barker Trust Agreement, No. 20455-VCL, 2007 WL 1800645, at *12 (Del. Ch. June 13, 2007).

---

[11] A contract to pay the debt of another must not only be in writing, but the writing must contain on its face enough to show that the person signing it was assuming liability.  Woodcock v. Udell, 97 A.2d 878, 881 (Del. 1953).

Plaintiff's equitable estoppel claim fails because Plaintiff has not produced any evidence indicating that it hired the additional employee because of Pouls' personal guaranty to pay, let alone evidence that is clear and convincing.  Rather, the evidence Plaintiff relies on indicates only that 4C hired the additional employee because of the guaranteed work and retainer.

Plaintiff's own President, Timmons, testified during his deposition: "I suggested a retainer-like agreement in order to guarantee the resources because we did not want to hire extra personnel unless he was going to guarantee the work."  (Timmons Dep. 39)  Timmons added, "the retainer was, in essence, a way that I could depend on a certain amount of money as a minimum coming in to bring on the additional programmers needed to perform the tasks."  (Id.)

This testimony evidences only that Plaintiff hired an additional employee because of Defendants' promise to give 4C all their web design business, not that Pouls would pay any outstanding debt of the Corporate Defendants.

Consequently, Plaintiff has failed to extract the guaranty from the statute of frauds, and the alleged guaranty remains unenforceable.[12]

---

[12] 4C also argues that the doctrine of part performance is an exception to the statute of frauds that allows enforcement of the guaranty, and the record is

12

b.

To pierce a corporate veil, "a plaintiff must show that the interests of justice require it because matters like fraud, public wrong, or contravention of law are involved." eCommerce Industries, Inc. v. MWA Intelligence, Inc., No. 7471-VCP, 2013 WL 5621678, at *27 (Del Ch. Sept. 30, 2013); see also Trevino v. Merscorp, Inc., 583 F. Supp. 2d 521, 529 (D. Del. 2008) ("While no single factor justifies a decision to disregard the corporate entity . . . an overall element of injustice or unfairness must always be present.").

Plaintiff fails to articulate why justice requires disregarding the corporate forms of the Corporate Defendants. Plaintiff writes that "Pouls has used to the [sic] Defendant Entities to commit fraud," (Opp'n Br. at 17), but fails to

---

clear that 4C performed its contractual obligations.  (Opp'n Br. at 13-14) Yet "[a]cts constituting partial performance [] must be a joint act or an act which 'clearly indicates mutual assent' of the parties to the oral contract." Shahan v. Shahan, 2012 WL 6114972, at *4 (Del. Ch. Dec. 10, 2012); Chaplake Holdings, Ltd. v. Chrysler Corp., 1999 WL 167834, at *22 (Del. Super. Jan. 13, 1999) ("The acts of partial performance must be ones that the actor would not have done except for the contractual obligations.").

Here, 4C points to its hiring of an additional employee and continued work for the Corporate Defendants to prove part performance.  Yet, such evidence does not "clearly indicate[] mutual assent," Shahan, 2012 WL 6114972, at *4, nor constitute the type of performance that 4C "would not have done except for" Pouls' guaranty, Chaplake Holdings, Ltd., 1999 WL 167834, at *22.  Rather, 4C's performance is plausibly explained by the parties' agreement — using either Plaintiff's or Defendants' differing interpretations.  Consequently, the Court holds that 4C's performance does not extract Pouls' alleged guaranty from the statute of frauds.

explain how the existence of the corporate forms were a means to such commission.

Instead, Plaintiff argues only that "Pouls fraudulently set forth that he would give 4C all of his business," (id.); "two of the five Defendant Entities did not have bank accounts," (id. at 18); and "Pouls, individually was insolvent, even with all of the proceeds from the Defendant Entities," (id.).

None of these allegations evidence a wrong that would be corrected — let alone a wrong that must be corrected — by piercing the corporate veil.[13]  Consequently, Defendant Pouls is dismissed from 4C's breach of contract claim.

**B.**

In the second count of its Amended Complaint, Plaintiff alleges Pouls, in his individual capacity, fraudulently misrepresented to 4C that "he would pay for work performed by 4C for its websites in addition to the weekly retainer payments."[14] (Am. Compl. ¶ 71)

---

[13] To the extent Plaintiff argues Pouls used the corporations to limit his personal liability, "limiting one's personal liability is a traditional reason for a corporation.  Unless done deliberately, with specific intent to escape liability for a specific tort or class of torts, the cause of justice does not require disregarding the corporate entity."  Mobil Oil Corp. v. Linear Films, Inc., 718 F. Supp. 260, 269 (D. Del. 1989) (quoting Zubik v. Zubik, 384 F.2d 267, 273 (3d Cir. 1976)).

[14] To satisfy a claim for fraudulent misrepresentation, a plaintiff must show:
> (1) [T]he defendant falsely represented or omitted facts that the
> defendant had a duty to disclose; (2) the defendant knew or believed
> that the representation was false or made the representation with

14

Defendants move to dismiss the count on the grounds the economic loss doctrine precludes Plaintiff's claim.[15]  (See Br. at 9)  Although the Court will grant Defendants' motion, it does so on different grounds, namely 4C's failure to articulate damages separate and independent from those caused by Defendants' alleged breach.

A plaintiff alleging both fraudulent misrepresentation and breach of contract must prove that the damages pled under each cause of action are distinct.  AFH Holding Advisory, LLC v. Emmaus Life Sci., Inc., No. N12C-09-045 MMJ CCLD, 2013 WL 2149993, at *13 (Del. Super. Ct. May 15, 2013) (granting summary judgment for defendant on plaintiff's fraud claim because claimant "has not demonstrated a prima facie basis for damages for fraud or fraud in the inducement, separate and apart from any compensatory damages or declaratory relief to which [he] may

---

a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.
DCV Holdings, Inc. v. ConAgra, Inc., 889 A.2d 954, 958 (Del. 2005).

[15] "The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other property) and the only losses suffered are economic in nature." Danforth v. Acorn Structures, Inc., 608 A.2d 1194, 1195 (Del. 1992) "[E]conomic losses as those losses that are "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property, as well as the diminution in value of the product because it is inferior in quality and does not work for the general purposes for which it is manufactured and sold." Id. at 1195 n. 3; see also Delmarva Power & Light v. Meter-Treater, Inc., 218 F. Supp. 2d 564, 569 (D. Del. 2002).

be entitled for breach of contract or unjust enrichment.");

Greenstar, LLC v. Heller, 934 F. Supp. 2d 672, 697 (D. Del.

2013) ("The fraud damages must be more than a 'rehash' of the

contract damages.") (quoting Cornell Glasgow, LLC v. La Grange

Props., LLC., No. N11C-05-016 JRS CCLD, 2012 WL 2106945 (Del.

Super. Ct. June 6, 2012)).

   4C does not aver any damages independent of those allegedly

incurred by Defendants' alleged breach of the contract.

   Plaintiff claims that the Corporate Defendants had an

outstanding balance of $152,547.29 for Plaintiff's services, and

Defendants breached the contract by refusing to pay.  (Am.

Compl. ¶ 68)  Plaintiff's alleged loss caused by Pouls'

misrepresentation is also $152,547.29—the very sum of the

outstanding balance.  (Id. at ¶ 76)  Consequently, it is evident

that Plaintiff is simply rehashing the damages it alleges it

suffered by Defendants' breach, and the court will accordingly

grant Defendants' motion for summary judgment.


## c.

   4C claims Defendants are liable under promissory estoppel

because Defendant Pouls, "individually and as owner of the

Defendant companies, promise[d] [] Timmons that if 4C performed

work that Poul's [sic] requested that they would be compensated

for such work," and it was Pouls' "reasonable expectation that

the above promise would induce action on the part of the promisee, 4C."  (Am. Compl. ¶79-80)[16]

Defendants argue that 4C's breach of contract claim, and the contract that underlies the claim, precludes 4C's promissory estoppel claim.  (Defs.' Br. at 12)  The Court agrees.

Promissory estoppel "is an equitable remedy designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement." Weiss v. Northwest Broad., Inc., 140 F. Supp. 2d 336, 344-45 (D. Del. 2001).  A "party cannot assert a promissory estoppel claim based on promises that contradict the terms of a valid, enforceable contract." Weiss, 140 F. Supp. 2d at 345.  The mere overlapping of subject matter constitutes a conflict that precludes prosecuting a claim for promissory estoppel. J.C. Trading Ltd. v. Wal-Mart Stores, Inc., 947 F. Supp. 2d 449, 457-58 (D. Del. 2013) ("The Supplier Agreements cover the same subject matter as Walmart's alleged oral promises (i.e., the sale of merchandise) and, thus, bar any claim of promissory

---

[16] 4C does not claim that Defendants are liable under promissory estoppel for Siciliano's statement not to worry about the status of the retainer.  (See Opp'n Br., Ex. 4)  4C makes no mention of this exchange in its Amended Complaint, nor in its opposition brief.  (See Am. Compl. ¶79-83; Opp'n Br. at 20-21)

Furthermore, to the extent Plaintiff alleges a claim for promissory estoppel stemming from Pouls' personal guaranty, such a claim fails for the same reason undermining 4C's argument that equitable estoppel extricated the guaranty from the statute of frauds: 4C's inability to prove detrimental reliance.  (See II.A.2.a.)

17

estoppel."); <u>see also</u>   <u>Beck & Panico Builders, Inc. v.</u>
<u>Straitman</u>, No. 08A-08-014 PLA, 2009 WL 5177160, at *6 (Del.
Super. Ct. Nov. 23, 2009) ("Because promissory estoppel
substitutes the plaintiff's detrimental reliance for
consideration to salvage an otherwise unenforceable promise, it
will not apply where the alleged promise was bargained for as
part of a contract.")(citing <u>Genencor Int'l, Inc. v. Novo</u>
<u>Nordisk A/S</u>, 766 A.2d 8, 12 (Del. 2000)).

The promise underlying 4C's promissory estoppel claim, that
the Corporate Entities would pay 4C for services rendered, is
simply the contractual obligation 4C bargained for with the
Corporate Defendants.[17]   Because the promise is a constitutive
element of an existing contract, 4C's promissory estoppel claim
must be dismissed.


**D.**

Plaintiff alleges that Defendants are liable under a claim
of unjust enrichment because "Defendants were enriched by the

---

[17] Plaintiff itself admits the promises were bargained-for in its opposition
brief:
> Pouls and the Defendant Entities made multiple representations to
> Timmons that they would provide 4C with all of their business and
> provide 4C with $3,000 per week plus a monthly balance, <u>in exchange
> for</u> 4C hiring another employee, creating the "written book," and
> being more accessible and timelier concerning 4C's work for Pouls
> and the Defendant Entities.  Consistent with this, Plaintiff[] ha[s]
> established all of the elements of promissory estoppel.

(Opp'n Br. at 21)

work performed for them by 4C," and that "4C performed such

work, but was not compensated." (Am. Compl. ¶¶ 85-86)

Unjust enrichment occurs "in the event of the unjust

retention of a benefit to the loss of another, or the retention

of money or property of another against the fundamental

principles of justice or equity and good conscience." Segovia

v. Equities First Holdings, LLC, No. 06C-09-149-JRS, 2008 WL

2251218, at *20 (Del. Super. Ct. May 30, 2008

Defendants again move to dismiss on the grounds their claim

is precluded by the existence of a contract. (Br. at 13)

Defendants claim that because one party's version of the

contract will be enforced, "[t]here is no scenario whereby an

unjust enrichment theory can result in recovery to the

Plaintiff[]." (Id.) The Court, again, agrees.

If the jury finds that 4C agreed to a flat-fee contract

with the Corporate Defendants, then they will have received

exactly what they bargained for, and thus no unjust enrichment

will have occurred. On the other hand, if the jury finds for 4C

on its breach of contract claim, than the Corporate Defendants

will be liable for the outstanding balance. In either

situation, no claim for unjust enrichment can lie. Bakerman v.

Sidney Frank Importing Co., Civ. A. 1844-N, 2006 WL 3927242, at

*18 (Del Ch. Oct. 10, 2006) ("When the complaint alleges an

express, enforceable contract that controls the parties'

19

relationship . . . a claim for unjust enrichment will be
dismissed.").

## E.

4C avers Defendants breached the covenant of good faith and
fair dealing implied under Delaware law.  (Am. Compl. ¶ 91)

"Stated in its most general terms, the implied covenant
requires a party in a contractual relationship to refrain from
arbitrary or unreasonable conduct which has the effect of
preventing the other party to the contract from receiving the
fruits of the bargain."  Dunlap v. State Farm Fire & Cas. Co.,
878 A.2d 434, 442 (Del. 2005).

This is not an instance of a breach of the duty of good
faith, but rather a disagreement as to the exact content of the
parties' agreement.  Plaintiff has failed to propound any
evidence indicating that Defendants prevented 4C from receiving
the fruits of the parties' bargain.  Instead, Defendants simply
believe a different agreement has been made.  Consequently,
Plaintiff's claim will be dismissed.

## F.

Defendants move for summary judgment on Plaintiff's claim
for conversion.  Because Plaintiff has failed to propound
evidence of a necessary element, namely that it asked Defendants

to cease using the front-end source code Defendants allegedly impermissibly copied, Plaintiff's claim will be dismissed.

"Conversion is the 'act of dominion wrongfully exerted over the property of another, in denial of his right, or inconsistent with it.'" Triton Constr. Co. v. E. Elec. Serv., Inc., No. 3290-VCP, 2009 WL 1387115, at *24 (Del. Ch. May 18, 2009) (footnotes omitted) (quoting McGowan v. Ferro, 859 A.2d 1012, 1040 (Del. Ch. 2004)). Before a plaintiff can bring an action for conversion, the plaintiff must first show that "it made a demand that the property be returned and the defendant refused the demand."[18] Triton, 2009 WL 1387115, at *24 (emphasis omitted). Such a requirement can only be excused when the "alleged wrongful act amounts to a denial of the rights of the real owner." Id.

Plaintiff alleges Defendants "copied the graphics and front-end source code on certain websites maintained by Plaintiff 4C" after Plaintiff "requested that Defendants not copy, or cause to be copied, websites 4C maintained on its servers. (Am. Compl. ¶ 98-99)

---

[18] The Court also notes that Delaware has generally only applied conversion "to the wrongful exercise of dominion over tangible goods." Res. Venture, Inc. v. Ress. Mgmt. Int'l, Inc., 42 F. Supp. 2d 423, 439 (D. Del. 1999). Conversion for intangible property exists only when "intangible property relations are merged into a document." Sanirab Corp. v. Sunroc Corp., No. CIV.A. 00C-02-191SCD, 2002 WL 1288732, at *4 (Del. Super. Ct. April 29, 2002). The parties did not brief whether the source code or front-end graphics at issue here constitutes a document. Accordingly, the court does not make a ruling as to whether the merger doctrine applies.

However, despite a section in its brief entitled "Plaintiff[] Ha[s] Established The Essential Elements To [Its] Conversion Claim" (Opp'n Br. at 19), Plaintiff does not bring to the Court's attention any evidence supporting the allegation made in the Amended Complaint that it requested Defendants not to copy or cause to be copied the websites for the Corporate Defendants.

In fact, the only evidence presented to the Court regarding whether Plaintiff requested that the Corporate Defendants not use the graphics and front-end source code is Timmons' promise to Pouls that he would provide the Corporate Defendants with a "'backup book' that would identify how all of 4C's computer programming was written for all of the Defendant Entities, so that Pouls and the Defendant Entities could reference this book in the event of a problem." (Opp'n Br. at 4)

Given the lack of evidence for one of conversion's necessary elements, and the clear evidence that the parties' dispute resounds only in contract, Defendants' motion as to Plaintiff's conversion claim will be granted.

**IV.**

For the reasons stated above, Defendants' motion for summary judgment will be granted in part and denied in part.  An appropriate order accompanies this opinion.

Date: March _____, 2014

_____

Hon. Joseph E. Irenas
Senior United States District Judge